**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

Chambers of
Matthew J. Maddox
United States Magistrate Judge
MDD_MJMChambers@mdd.uscourts.gov



101 West Lombard Street
Chambers 3B
Baltimore, Maryland 21201
(410) 962-3407

September 18, 2023

TO ALL COUNSEL OF RECORD

Re:   *Karen P. v. Kijakazi*
      Civil No. MJM-22-1201

Dear Counsel:

On May 19, 2022, Plaintiff Karen P. commenced this civil action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA," "Defendant") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (ECF 1). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF 12) and Defendant's Motion for Summary Judgment (ECF 14).[1] I have reviewed the pleadings and the record in this case and find that no hearing is necessary. L.R. 105.6. (D. Md. 2021).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under this standard, Plaintiff's motion will be denied, Defendant's motion will be granted, and the SSA's decision will be affirmed.

**I.   Background**

Plaintiff filed her application for DIB on April 24, 2019, alleging disability beginning on June 1, 2017. (R. 16). Plaintiff's application was initially denied on August 13, 2020, and the initial determination was affirmed upon reconsideration on March 26, 2021. (*Id*.) Thereafter, Plaintiff requested an administrative hearing, and Administrative Law Judge ("ALJ") Melvin G. Olmscheid held a telephone hearing on September 2, 2021. (*Id*.) Plaintiff, represented by counsel, testified at the hearing. (R. 40–58). An impartial vocational expert also appeared and testified. (*Id*.) Plaintiff amended her alleged onset date to April 24, 2018. (R. 42, 961). The ALJ issued an unfavorable decision on September 16, 2021. (R. 13–36). On March 22, 2022, the Appeals Council denied

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 5).

plaintiff's request for review (R. 1–6), thereby rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then commenced this civil action seeking judicial review under 42 U.S.C. § 405(g).

## II.   The SSA's Decision

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ determines a claimant's disability claims using the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

If the first three steps do not yield a conclusive determination of disability, "the ALJ then assesses the claimant's residual functional capacity ['RFC'], which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering "all of the claimant's medically determinable impairments[,]" regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

When mental impairments are alleged, the ALJ must apply the "special technique" to determine the severity of the mental impairments. 20 C.F.R. § 404.1520a. The ALJ is required to rate the limitations in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (known as "paragraph B criteria" for mental disorders). *Id.* § 404.1520a(c)(3). The ALJ uses a five-point scale to rate a claimant's limitations in these functional areas: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). The rating is based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). To satisfy the paragraph B criteria, the mental impairment must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). If the rating of a limitation is "none" or "mild," then the ALJ may generally conclude that the mental

*Karen P. v. Kijakazi*
Civil No. MJM-22-1201
September 18, 2023
Page 3

impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder; history of cerebrovascular accident; alcohol-induced anxiety disorder; alcohol abuse disorder; anxiety; and depression. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). The ALJ's RFC finding further indicated the following limitations:

> Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) lifting and carrying 20 pounds occasionally and less than 10 pounds frequently; standing and walking for six hours in an eight-hour day; and sitting for six hours in an eight-hour day. She can perform work that frequently requires stooping, kneeling, crouching, crawling, and climbing (except never when requiring the use of ladders, ropes, and scaffolds), and occasional balancing. She needs to avoid all hazards. She can perform jobs that require frequent handling and fingering with her left hand. She can perform jobs consisting of unskilled, routine, and repetitive tasks, involving only simple, work-related decisions, with only occasional changes in the routine work setting. Time off task during the workday can be accommodated by normal breaks, i.e., she is able to sustain concentration and attention for at least two hours at a time.

(R. 23). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. 29).

Additionally, at step five, the ALJ found, based on testimony from a vocational expert (VE), that Plaintiff was capable of performing other work in the national economy, including office helper, information clerk, and clerical checker. (R. 30–31). Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act. (R. 31).

### III.   Standard of Review

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (citation omitted).

*Karen P. v. Kijakazi*
Civil No. MJM-22-1201
September 18, 2023
Page 4

**IV.   Discussion**

Plaintiff argues that the ALJ failed to properly account for her moderate limitation in concentration, persistence, or maintaining pace when formulating the RFC.[2] (Pl. Mem. 9–20). Specifically, Plaintiff argues that the RFC finding "runs afoul of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)" because "the ALJ did not impose any RFC restriction" to account for her moderate limitations in the ability to concentrate, persist, or maintain pace or "explain the reasons for the omission." (Pl.'s Mem. 11).

The RFC describes the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996). To assess RFC, an ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 WL 374184, at *7. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Under *Mascio*, "once an ALJ determines at step three finding that a plaintiff suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015). Thus, *Mascio* did not "impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Rather, the United States Court of Appeals for the Fourth Circuit clarified that remand would not be necessary if the "'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638).

Here, at step three, the ALJ first summarized Plaintiff's testimony concerning anxiety and depression and Plaintiff's opinion that curbing her daily alcohol use would not decrease her mental health symptoms. (R. 20). The ALJ then evaluated Plaintiff's medical record noting that although Plaintiff "has consistently reported anxiety" and "has been noted to be anxious and have alcohol induced anxiety disorder," "her symptoms have not been significant." (*Id.*) While noting that Plaintiff "has been assessed as depressed . . . and has presented as tearful," the ALJ pointed out that "she does not receive specialized mental health treatment[]" and did not require "inpatient treatment or even crisis stabilization services during the period in question." (*Id.*) Instead, Plaintiff "takes antidepressants prescribed by her primary care physician, which have had to be adjusted from time-to-time." (*Id.*) The record shows that Plaintiff's primary care physician, Thomas A. Biondo, MD, prescribed Effexor and Ativan in 2018 and 2019, then switched to Zoloft in 2020 and 2021. (See, e.g., R. 638, 642, 646, 790, 954). Records note that Plaintiff's anxiety was "under

---

[2] Plaintiff only challenges the ALJ's assessment of her mental RFC limitations. (Pl. Mem. 9–20).

control with meds" in July 2020 (R. 790) and that "meds [were] effective" for her anxiety and depression in September 2021 (R. 959).

Moreover, Plaintiff had a virtual psychological examination by consultative examiner R. Hallie Strauss, Psy.D. in July 2020. (R. 20, 736–42). Plaintiff reported that she suffers from a seizure disorder and discussed her symptoms of anxiety and depression as well as the impact of her mother's death and family issues on her mental condition. (R. 26, 736). The ALJ considered Dr. Strauss's report, noting that "[u]pon examination, there were few abnormalities":

> [Plaintiff] was dressed appropriately and adequately groomed []. She cried frequently throughout the interview when discussing a variety of relationships or circumstances in her life. Nonetheless, she was polite and respectful and made adequate eye contact. She described her mood as sad and anxious, although she stated that she had "good days" and "bad days." Her affect was depressed []. Her sleep was not an issue, although she slept for more than 12 hours a day and was still fatigued, reportedly from her seizure medication []. She was cooperative and responded to all questions in an open and seemingly forthcoming manner. Her speech was clear, coherent, relevant, and elaborative. She denied suicidal ideation and self-harming behavior but stated that she had cut herself "years ago" []. Her though process contained no looseness of associations, tangentiality, or circumstantiality. She did not seem to suffer from paranoia, preoccupations, delusions, ideas of reference, or hallucinations. On a Mini Mental Status Examination (MMSE), she scored a 25, placing her in the mild cognitive impairment range. She had some mild difficulty recalling one word after a short delay of several minutes. She was unable to read the words "close your eyes" or copy a design of intersecting pentagons. Nonetheless, her fund of knowledge was at least average. Her insight and judgment appeared sound.

(R. 21). The ALJ stated that according to Dr. Strauss, "the overall results of the consultative psychological examination were most consistent with a diagnosis of moderate major depressive disorder as well as an unspecified seizure disorder" and "[t]he prognosis was generally positive for appreciable recovery." (*Id*.) The ALJ also commented that Dr. Strauss "noted that [Plaintiff's] current psychiatric state appeared to be significant, with her seeming to be impacted by the effects of the disorder on a daily basis." (*Id*.)

Plaintiff underwent a consultative physical examination in July 2020 by Sajid Arain, MD, during which she reported that her "depression and anxieties are mainly controlled" by medication, and she "[was] not seeing a psychiatrist." (R. 25, 745–52). The ALJ noted that "[t]he physical examination was mostly unremarkable." (R. 25). According to Dr. Arain, neurologically, Plaintiff "was alert and oriented to person, place, and time," and "her mood was neutral and affective range intact." (*Id*.) Moreover, "[t]here was no psychomotor restlessness or expressed anxiety. Speech was clear, coherent, and free of aphasia, dysarthia, stuttering, and involuntary vocalizations. Verbal content was appropriate. Memory, concentration, and general fund of knowledge were intact. Insight and judgment were intact." (R. 25–26).

Based on the mental health evidence, the ALJ found that Plaintiff has a mild limitation in three of the four functional areas for mental disorders: understand, remember, or apply information; interact with others; and adapt or manage oneself. (R. 21–22). The ALJ found that Plaintiff has a moderate limitation in concentration, persistence, or maintaining pace, an area of mental functioning that concerns one's ability to focus attention on work activities and stay on task at a sustained rate. The ALJ reasoned that although Plaintiff "consistently reported problems with activities within this area . . . the evidence does not indicate more than a moderate limitation." (R. 22). The ALJ specifically cited Dr. Strauss's observations and considered Plaintiff's seizures when evaluating the functional domain of concentration, persistence, or maintaining pace. (*Id.*) The ALJ explained, giving Plaintiff some deference, "it is reasonable that her seizures would cause her problems with initiating and performing a task that she understands and knows how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; and ignoring or avoiding distractions while working." (*Id.*)

The ALJ's RFC finding included mental limitations. The ALJ specifically found that Plaintiff "can perform jobs consisting of unskilled, routine, and repetitive tasks, involving only simple, work-related decisions, with only occasional changes in the routine work setting." (R. 27). The ALJ also found that "[t]ime off task during the workday can be accommodated by normal breaks, i.e., she is able to sustain concentration and attention for at least two hours at a time." (*Id.*) The ALJ explained that the limitations are based on Plaintiff's "moderate limitation in the 'paragraph B' area of concentrating, persisting, or maintaining pace and her problems with initiating and performing a task that she understands and knows how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; and ignoring or avoiding distractions while working." (*Id.*)

The ALJ acknowledged the Fourth Circuit's decision in *Mascio* and explained that Plaintiff's moderate limitation in concentration, persistence, or maintaining pace was factored into the RFC finding. (*Id.*) In addition to "the evidence discussed elsewhere in [his] decision," the ALJ considered the nonmedical evidence of Plaintiff's activities of daily living when assessing her RFC. (*Id.*) The ALJ discussed details listed in Plaintiff's Function Reports, noting that while reporting "problems with personal care, cooking, household chores, getting around, shopping, and socializing," Plaintiff stated that "she and her husband cared for his disabled mother who lives next door." (*Id.*) Moreover, she can care for a puppy and "play games on her phone, an activity that requires a reasonable amount of focus and attention." (*Id.*) The ALJ also evaluated details Plaintiff reported to Dr. Strauss during the July 2020 consultative psychological examination. (*Id.*) Considering this evidence overall, the ALJ concluded that Plaintiff's "daily activities are not substantially restricted and are consistent with a light level of work." (*Id.*)

Finally, in assessing Plaintiff's RFC, the ALJ evaluated "medical opinions and prior administrative medical findings in the record." (*Id.*) "Dr. Strauss opined a moderate limitation with the claimant's ability to complete tasks, recalling basic information, multi-tasking, or utilizing her executive function skills." (R. 28). However, Dr. Strauss also "opined that [Plaintiff's] ability to respond appropriately to changes in a work setting, deal with the usual stressors in a competitive workplace, be aware of normal hazards, and take appropriate action was markedly compromised

by her psychiatric state." (*Id*.) "Overall, according to Dr. Strauss, the claimant's mental health appeared to cause moderate impairment in her functioning in fulltime employment within a competitive work environment." (*Id*.) The ALJ found Dr. Strauss's opinion generally unpersuasive and "somewhat inconsistent" with findings offered in support of it, "especially the mental status examination and MMSE." (R. 28). Nonetheless, the ALJ agreed with "the assessment that [Plaintiff] has 'moderate' limitations in concentration because of some anxiety, alcohol use, and depression," but "[t]here are no indications that she has anything more than a 'mild' limitation in other areas." (*Id*.)

As to prior administrative medical findings regarding mental functional limitations, the ALJ noted that psychological consultants at both levels made the following "paragraph B" findings: "a mild limitation in the area of understanding, remembering, or applying information; a mild limitation in the area of interacting with others; a moderate limitation in the area of concentrating, persisting, or maintaining pace; and a mild limitation in the area of adapting or managing herself." (*Id*.) The consultants then "opined that the claimant could be expected to perform simple, repetitive, and routine tasks that are not production-based." (*Id*.) The ALJ found these limitations generally persuasive and reasoned that "[t]hey are supported by citations to the medical and nonmedical evidence, and are generally consistent with the mostly mild findings as set forth above." (*Id*.) However, the ALJ disagreed with the requirement that Plaintiff can do work that is not production-based because "[t]he records do not show significant cognitive deficit, and the statement of 'marked' limitations in the ability to respond appropriately to changes in a work setting, to deal with usual stressors in a competitive workplace, be aware of normal hazards, and take appropriate action in Dr. Strauss' opinion is based on [Plaintiff's] statements, rather than the mental status examination and MMSE." (*Id*.)

As such, to arrive at the mental RFC limitations, the ALJ considered the relevant evidence in the record and, consistent with the Fourth Circuit's decision in *Mascio*, cited evidence in the record to show why no additional RFC limitation was needed to account for Plaintiff's moderate limitation in concentration, persistence, or maintaining pace. Therefore, Plaintiff's argument that the ALJ's decision failed to comply with *Mascio* is unavailing.[3]

V.   **Conclusion**

Given that substantial evidence supports the ALJ's findings, which were reached through

---

[3] Plaintiff argues that her mental disorders are distinguishable from the plaintiff in *Shinaberry*, who had a "lifelong intellectual disability" and demonstrated that she could maintain "gainful activity despite her severe mental limitations." (Pl. Reply 2–3). Although the plaintiff's individual mental impairments and work history were certainly relevant to the Fourth Circuit's analysis in *Shinaberry*, the standard set forth in *Mascio* and its progeny is indisputable: "the ALJ's RFC determination must account for Plaintiff's moderate limitation in concentration, persistence, or pace, unless he can explain why the limitation does not translate into an RFC limitation." *George W. v. Kijakazi*, No. CV ADC-21-306, 2022 WL 1092700, at *4 (D. Md. Apr. 12, 2022) (citing *Mascio*, 780 F.3d at 638; *Talmo*, 2015 WL 2395108, at *3). As discussed above, the ALJ did so here.

*Karen P. v. Kijakazi*
Civil No. MJM-22-1201
September 18, 2023
Page 8

application of correct legal standards, Plaintiff's Motion for Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted. The SSA's decision will be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

    A separate Order will follow.

                                                      Sincerely,

                                                      /S/

                                                      Matthew J. Maddox
                                                      United States Magistrate Judge